### KATCHER v. WOOD et al.

### No. 11571.

Circuit Court of Appeals, Eighth Circuit.

Feb. 7, 1940.

752

Henry C. Hughes, of St. Louis, Mo., for appellant.

Wm. J. Becker, of Clayton, Mo. (Edwin Rader, of Clayton, Mo., on the brief), for appellees.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

THOMAS, Circuit Judge.

This is an appeal in bankruptcy by the trustee of the estate of Nathan C. Antle from an order of the district court reversing and setting aside an order of the referee denying a reclamation petition of Floyd E. Wood and Albert H. Dudenhoeffer.

Wood and Dudenhoeffer sought by their petition an order compelling the trustee to surrender to them certain drug store fixtures located in St. Louis County, Missouri, outside the City of St. Louis. They claimed the right to the fixtures by virtue of a chattel mortgage executed by the bankrupt to secure notes given by him to Wood for the purchase price of the fixtures. Dudenhoeffer holds the notes and mortgage as pledgee. The chattel mortgage was dated May 24, 1938, acknowledged June 1, 1938, and recorded in St. Louis County where the store was located June 9, 1938.

The bankrupt had been living in San Francisco, California, for several years prior to 1938. He came with his family to the City of St. Louis and stopped at a hotel May 14, 1938. He purchased the store, taking title thereto June 8, 1938, and later in the month rented a house and moved into it near the store in St. Louis County.

The only question presented on this appeal is whether the mortgage was properly recorded in St. Louis County instead of in the City of St. Louis. The answer to this question depends upon whether or not Antle, the bankrupt, was at the time the mortgage was executed and recorded domiciled in California or in the City of St. Louis within the meaning of the Missouri recording statutes.

Section 3097 of the Revised Statutes of Missouri, 1929, Mo.St.Ann. § 3097, p. 1919, provides that "No mortgage or deed of trust of personal property * * * shall be valid against any other person than the parties thereto * * * unless the mortgage * - * * be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides * * * and in the case of the city of St. Louis, with the recorder of deeds for said city, * * * or, where such grantor is a non-resident of the state, then in the office of the recorder of deeds of the county or city where the property mortgaged was situated at the time of executing such mortgage."

The matter was heard before a referee, and he found that at the time the bankrupt executed the mortgage he was a resident of the City of St. Louis; that by reason thereof the mortgage was improperly recorded in the county instead of in the city; and that consequently it was not a valid lien against the assets in the possession of the trustee.

Upon review the district court found that "At the time the mortgage was recorded the Bankrupt had not established a residence in this state (Missouri), and the mortgage was properly recorded in St. Louis County."

After reviewing the evidence the court stated " * * * that on June 9, 1938, the date the mortgage was recorded, the Bankrupt had not established a permanent residence in the City of St. Louis. He was temporarily stopping at a hotel in St. Louis while looking for a location in which to enter the retail drug business. He looked at many drug stores in St. Louis City and County. He found and purchased such a store in Webster Groves (in St. Louis County), and then moved to and established his residence in that place. His residence was in California until he actually established a residence in Missouri. The first place that he took up in this state with the intention of making it his permanent or indefinite abode was in the County of St. Louis. Immediately prior thereto he was stopping in a hotel in the City of St. Louis, with no intention of making it his residence, but was temporarily there while looking for a location in which to enter business." •

The order appealed from was entered by the district court March 15, 1939. The appeal is therefore controlled by the General Orders in Bankruptcy as amended January 16, 1939, and effective February 13, 1939. General Order 36, 11 U.S.C.A. following section 53, provides that appeals shall be regulated by the Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following section 723c, Rule 52 of which provides that findings of fact "shall not be set aside unless clearly erroneous."

We have reviewed the evidence and we are satisfied that it clearly supports the findings that prior to ·June 9, 1938, "the Bankrupt had not established a permanent residence in the City of St. Louis"; that "He was temporarily stopping at a hotel in St. Louis while looking for a location in which to enter the retail drug business"; and that the first place that he settled in Missouri "with the intention of making it his permanent or indefinite abode was in the County of St. Louis."

The contention of appellant is in substance that when the bankrupt left California with the intention of making his home in Missouri he lost his residence in California and became a resident of the City of St. Louis when he stopped at a hotel there while looking for a permanent location within the state.

The facts present a case of change of domicile from one state to a definite place in another and not a case of moving from one locality to another locality in the same state. Counsel have not called our attention to a single Missouri decision construing the words "resides" and "resident" as used in the recording statute, and we have found none. However the statute obviously contemplates a fixed place of abode and not mere temporary residence. In Nolker v. Nolker, Mo.Sup., 257 S.W. 798, 802, the Supreme Court of Missouri, in speaking of change of residence from one county to another within the state for purpose of jurisdiction in a divorce case, said: "Actual residence and the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode are sufficient to constitute a change of domicile." In the case of In re Lankford's Estate, 272 Mo. 1, 197 S.W. 147, 148, involving the matter of a collateral inheritance tax, the Supreme Court said: "Residence is largely a matter of intention. [Citations]. This intention is to be deduced from the acts and utterances of the person whose residence is in issue." In the case of In re Ozias' Estate, Mo.App., 29 S.W.2d 240, 243, the court said: "A person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead."

In Re Jones' Estate, 192 Iowa 78, 182 N.W. 227, 229, 16 A.L.R. 1286, a well-considered opinion written by Mr. Justice Faville, the court said: "acquisition of a new domicile must have been completely perfected, and hence there must have been a concurrence both of the fact of removal and the intent to remain in the new locality before the former domicile can be considered lost."

In the case of Texas v. Florida, 306 U.S. 398, 424, 59 S.Ct. 563, 576, 830, 83 L.Ed. 817, 121 A.L.R. 1179, the Supreme Court said: "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile. * * * the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of con-

duct are the controlling factors in ascertaining his domicile."

Under the rules adopted in the Restatement of Conflict of Laws a person may leave the state in which he has been domiciled and acquire a domicile in another state even though he establishes himself in temporary lodgings in a hotel and does not immediately settle in any particular building as a fixed place of abode. But unless he intends to make his home in the particular city or county in which he is living he may be found to have acquired a domicile in the state to which he has moved without acquiring a domicile in any territorial subdivision thereof. Restatement of Conflicts, Section 16 and comments.

A literal application of these rules to the instant situation might conceivably result in a finding that the bankrupt was a domiciled resident of Missouri but was not domiciled in a county or city of that state at the time the mortgage was recorded. Obviously the recording statute does not contemplate such a situation. We think that under that statute it must be said that Antle remained a resident of California until he actually acquired a permanent or indefinite abode in Missouri.

When the bankrupt left California and arrived in St. Louis May 14, 1938, upon registering at the hotel he stated that his residence was San Francisco, California. He also testified that he did not intend to stay at that particular address; that he was going to stay there until he got located; and that he had returned to the City of St. Louis, his former home, with the intention of buying a drug store in that city. He said that he hoped to find a place close to a high school in South St. Louis.

Within a few days after his return he began a search for a store to purchase and looked both in the City of St. Louis and outside the city in St. Louis County. He actually entered into a contract to purchase a store in Webster Groves in St. Louis County on May 24, 1938. There is testimony that on that date he indicated his desire for a house in Webster Groves and asked the witness to be on the lookout for one. Another witness testified that sometime prior to that date Antle had told him that he wanted to move to Webster Groves and put his son in school there. On June 24, 1938, he left the St. Louis hotel and moved to a home in Webster Groves.

It is clear that it can not be said that this evidence discloses a definitely formed intention on the bankrupt's part to make the City of St. Louis his home so as to associate him with a residence in that city. The most that can be said is that Antle intended to make his home somewhere in that locality, either in or near that city. But until he acquired a permanent or definite abode in some political subdivision of the State of Missouri we think it must be said that Antle remained a nonresident of Missouri within the meaning of the recording act. It therefore follows that the finding of the district court that on June 9, 1938, he was still a resident of California is not "clearly erroneous."

For the foregoing reasons the order appealed from must be and it is affirmed.