## STEWART v. GANEY.

No. 9635.

Circuit Court of Appeals, Fifth Circuit.

Nov. 19, 1940.

Rehearing Denied Jan. 4, 1941.

Bernard Lobman, of Montgomery, Ala., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

Walter D. Ganey owned retail dry-goods stores at Andalusia and Opp, Alabama. On January 10, 1940, he filed a voluntary petition in bankruptcy, and was, in due course, adjudicated a bankrupt. Under proper proceedings, he claimed certain of his property as exempt. On petition of the trustee, the referee disallowed the exemptions on the ground that the bankrupt had concealed property of a value greatly in excess of the amount of the exemptions allowed by the law of Alabama, and required him to select his exemptions from the property found to be concealed by him. The District Court set aside the order of the referee, and directed the trustee to deliver to the bankrupt the exemptions claimed by him. The trustee appealed to this court.

The proof relied upon to establish the concealment consisted entirely of an accounting. The bankrupt's inventory of his stock on January 1, 1939, valued his merchandise at approximately $23,000. His records showed that he purchased approximately $23,000 worth of goods during 1939. His sales-tax records disclosed sales for the year in the sum of $19,000, and the cost value of the goods remaining in the stores at the end of the year was approximately $14,000. From these figures it was calculated that the bankrupt was chargeable with $46,000 in merchandise or money, that he accounted for only $33,000, and was concealing the remaining $13,000 of assets.

In Alabama, a bankrupt has the right to select his exemptions in the amount of $1,000.[1] When, however, the bankrupt has concealed some of his property and has failed to tender it to the trustee, he cannot enforce his right of selection through a court of bankruptcy. A bankruptcy court is a court of equity. He who seeks equity must do equity, and must come into equity with clean hands. To permit a bankrupt who unlawfully withholds property in excess of his statutory exemptions to take other property as well would result in gross injustice to his creditors.[2]

W. H. Albritton, of Andalusia, Ala., and Jack Crenshaw, of Montgomery, Ala., for appellant.

[1] Cowan v. Burchfield, D.C., 180 F. 614; In re Aronson, D.C., 233 F. 1022.

[2] In re Ansley Bros., D.C., 153 F. 983; Cowan v. Burchfield, supra; In re Denson, D.C., 195 F. 857.

Concealment of assets by a bankrupt is a fraud upon his creditors. It can only be established by clear and convincing proof. There was no proof of any literal transfer or concealment of any property, no falsification of any financial statement to secure credit; there was no scheme to execute any such intent. In this case, the proof consisted solely of an accounting shortage in merchandise. Whether or not such proof is sufficient to require a forfeiture of the bankrupt's right to make his own selection of his exemptions depends upon his ability reasonably to explain the shortage. If his explanation is reasonable and exonerates him from fraud, no restriction on his right to select his exemptions may be imposed.[3]

The uncontradicted proof establishes the following facts: The inventory made on January 1, 1939, which was used to establish the shortage, was based on figures and estimates furnished to the bankrupt, an illiterate man, by his clerks. His stock of merchandise at that time consisted largely of odds and ends, too old to be in style, which had been purchased in bulk from another store. These goods were inventoried at their cost price plus ten per cent, and were sold at prices ranging upward from fifteen per cent on the inventory value. Another dry-goods merchant of Andalusia, who was familiar with the bankrupt's stock, testified that the assortment was very poor and many of his dresses were absolutely worthless.

The merchants of Opp and Andalusia depended heavily upon farmers for their trade. In the year 1939, the farmers of the territory suffered almost a complete crop failure, and the purchasing power of the communities was appreciably restricted. There was a serious flood during the year, which inundated and damaged a portion of appellee's stock of merchandise. In the latter part of the year, the bankrupt, allegedly in an effort to secure cash with which to meet his pressing obligations, employed a promoter to conduct several sales at the stores. These were advertised as "sacrifice sales," and the goods sold, whether new or old, were substantially reduced in price. The heavy expense attendant upon the sales, and adverse weather conditions, together with the low prices and general trade conditions, caused these efforts to harm rather than to help the bankrupt's financial condition.

The debtor had been in business for eight years at the time of bankruptcy. His reputation for honesty and integrity was good. During his last month in business, he made regular and substantial payments to his creditors. The amount of his indebtedness at the time of bankruptcy was substantially equal to his obligations at the end of the previous year. The testimony of the bankrupt creditably withstood rigorous cross-examination by several attorneys for the creditors and questioning by the court.

Did the evidence, taken as a whole, establish a concealment by clear and convincing proof, or was the shortage reasonably explained? We agree with the District Court that the proof of concealment was not clear and convincing. The series of misfortunes that befell this bankrupt were real and serious. They stand uncontradicted in the evidence, and their effect upon the financial welfare of the debtor was not minimized. They furnish a reasonable explanation of whatever shortage may be charged to the bankrupt, after the original inventory is adjusted downward to reflect accurately the real value of the merchandise at that time.

The trustee contends that the finding of fact by the referee that the bankrupt had concealed property was improperly overturned by the District Court; that the finding was based on conflicting evidence involving questions of credibility, and should not have been disturbed unless it was patently erroneous and resulted in a miscarriage of justice. The status of a referee in bankruptcy, in so far as the force and effect of his findings of fact are concerned, is substantially that of a master. The findings of a master, to the extent that the District Court adopts them, are considered as the findings of the District Court; but in this case the District Court did not adopt the findings of the referee, but set them aside and made its own finding that there was no concealment. This finding of the District Court, being supported by substantial evidence and not being clearly erroneous, must be accepted by us. Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

On petition for rehearing, we are taken to task for our failure in the opinion in this

---

[3] In re Aronson, supra.

case to cite and discuss General Order 47 of the Bankruptcy Rules, 11 U.S.C.A. following section 53. It is said that our refusal to overturn the findings of the District Judge in favor of those made by the referee was in violation of General Order 47 and of Rule 53(e) (2) of the Rules of Civil Procedure.

The general order and the rule, in this regard, contain essentially similar provisions. In non-jury matters, they require the District Judge to accept the findings of fact made by the referee, unless they are clearly erroneous. The judge, after hearing, may accept them or reject them in whole or in part, or may modify them. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that findings of fact made by the District Judge shall not be set aside unless clearly erroneous; the findings of a master, to the extent that the court adopts them, are considered the findings of the court.

■ As we stated in the original opinion, the material evidence upon which the concealment was found was without dispute; the bankrupt's explanation of the shortage was uncontradicted and was reasonable. The determination of concealment was an ultimate question of fact which could be reached only by inference from the other undisputed facts. When a referee's finding is based wholly upon an inference, drawn from uncontradicted facts, and the reasonableness of the inference may be as fairly determined by the court as by the referee, no presumption in favor of the referee's finding exists which binds the independent judgment of the court. United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3; Kycoga Land Co. v. Kentucky River Coal Corporation, 6 Cir., 110 F.2d 894.

■ In this case we are not called upon to determine whether the appellate court should decide in favor of the referee or the District Court where the facts are in dispute, where questions of credibility are present, and different and conflicting, but reasonable and well supported, inferences are drawn by the two tribunals as to the ultimate fact.[1] This case is one in which the referee, the District Judge, and this court are equally competent to determine the question of concealment.

No question of credibility being present, the findings of the referee are entitled to little, if any, additional weight because he was confronted with the witnesses. The rules invoked have no application to such cases. This is made clear by considering this situation as if the rules did apply. The District Judge must be presumed to have followed the law, and to have considered the finding of the referee to be clearly erroneous. The fact that he drew a directly contrasting inference shows that he thought the referee was absolutely wrong. On appeal, this court must apply the same rules. So doing, it must review the record and make its own determination on the question of concealment. If it finds there was concealment, then the District Judge was clearly in error; if it finds that no concealment existed, the judge was not in error. By either applying or disregarding the rules, the same conclusion is reached. There is no object in charting or following a course to reach a position already attained.

Whether the value of the Josey stock was included in the trustee's computation is immaterial. It was considered by this court both in the amount to be accounted for and in the accounting. Any other discrepancies, real or apparent, are too inconsequential to alter the decision of the court.

The petition for rehearing is denied.

---

[1] The cases of Katcher v. Wood, 8 Cir., 109 F.2d 751, and Carter Oil Co. v. McQuigg, 7 Cir., 112 F.2d 275, seem to hold in favor of the findings of the District Court in such cases.